UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
TRUSTEES OF THE NATIONAL RETIREMENT FUND,

                            Plaintiffs,

    - against -

                                                    **OPINION & ORDER**

FIRESERVICE MANAGEMENT LLC f/k/a FIRESERVICE
MANAGEMENT MICHIGAN LLC; SMELTZER                No. 17-CV-4003 (CS)
ENTERPRISES INCORPORATED; and JOHN DOES 1-10 (all
other trades or businesses under common control with
FIRESERVICE MANAGEMENT LLC f/k/a FIRESERVICE
MANAGEMENT MICHIGAN LLC),

                            Defendants.
------------------------------------------------------------------------x

<u>Appearances</u>:

David C. Sapp
Stephanie Myers Bersak
Jennifer Oh
Alicare, Inc.
White Plains, New York
*Counsel for Plaintiffs*

Carmine J. Castellano
Hodgson Russ LLP
New York, New York
*Counsel for Defendants and Proposed Intervenors*

<u>Seibel, J.</u>

      Before the Court are the motion for summary judgment of Plaintiffs Trustees of the National Retirement Fund, (Doc. 51), and the motion to intervene, (Doc. 33), and motion for summary judgment, (Doc. 35), of Proposed Intervenors TurnoutRental LLC and Schoolcraft Ventures LLC.  For the reasons stated below, Proposed Intervenors' motions are DENIED, and Plaintiffs' motion is GRANTED IN PART and DENIED IN PART.

I.      **BACKGROUND**

   A.      **Facts**

The following facts are taken from the parties' Local Civil Rule 56.1 Statements and supporting materials and are undisputed unless otherwise noted.

Plaintiffs Trustees of the National Retirement Fund (the "Fund"), based in White Plains, New York, (*see* Doc. 2 at 2), sponsor a multiemployer pension plan (the "Plan") that provides pension benefits to, among others, members of the Chicago and Midwest Regional Joint Board (the "Union") under the Employee Retirement Income Security Act of 1974 ("ERISA") (codified at 29 U.S.C. §§ 1001-1461). (Doc. 43 ("Ds' 56.1 Resp.") ¶ 1.) Defendant Fireservice Management LLC f/k/a Fireservice Management Michigan LLC ("Fireservice"), a Michigan limited liability company that cleans and repairs protective clothing used in the firefighting industry, (Doc. 47 ("Ps' 56.1 Resp.") ¶¶ 1-2), was a party to a collective bargaining agreement with the Union, (Ds' 56.1 Resp. ¶ 3). Pursuant to this agreement, Fireservice made contributions to the Fund on behalf of certain of Fireservice's employees. (*Id.*)

Defendant Smeltzer Enterprises Inc. ("Smeltzer"), a Michigan corporation, operated under the name "White Tower Industrial Laundry & Cleaners Inc." and provided cleaning services to the automotive industry. (Ps' 56.1 Resp. ¶¶ 4-6.) It ceased doing business and was dissolved on July 15, 2009. (*Id.* ¶ 8.)

At all times, Martin T. Smeltzer was the sole owner of Smeltzer. (*Id.* ¶ 9.) He also initially owned 100 percent of Fireservice, but Joel Weiner purchased a 49 percent interest in Fireservice on July 1, 2007, and maintained that interest through the filing date of the Complaint

in this case. (Doc. 42-1 ("Smeltzer Aff.") ¶¶ 20-22; Doc. 42-2 ("Weiner Aff.") ¶¶ 3-4.) Mr. Smeltzer and Mr. Weiner each own 50 percent of the membership interests of two other businesses incorporated in Michigan: TurnoutRental LLC, which rents out firefighting gear, and Schoolcraft Ventures LLC, which owns the real property out of which Fireservice and TurnoutRental operate (together, "Proposed Intervenors"). (Ps' 56.1 Resp. ¶¶ 11-12, 14-17, 19.)

Smeltzer and Fireservice ("Defendants") contend that Smeltzer was a party to a collective bargaining agreement with the Union that was separate and distinct from Fireservice's agreement. (Ds' 56.1 Resp. ¶ 3.) According to Plaintiffs, however, Defendants "were parties to a series of collective bargaining agreements" and "collectively identified themselves as the employer obligated to make contributions to the Fund." (Doc. 54 ("Ps' 56.1 Stmt.") ¶ 3.)[1]

On May 4, 2011, the Fund notified Defendants that it had determined that "Fire Service Management LLC f/k/a White Tower Laundry" had withdrawn from the Plan as of December 31, 2009, and therefore incurred a withdrawal liability to the Fund of $221,783.46 under 29 U.S.C. § 1381. (Oh Decl. Ex. B; Ds' 56.1 Resp. ¶¶ 4, 6.) The notice demanded that Defendants make eighty payments of $4,079.09 per quarter beginning on or before June 1, 2011. (Ds' 56.1 Resp. ¶ 6.) On June 15, 2011, the Fund notified Defendants that they had failed to make the first

---

[1] Plaintiffs provide copies of collective bargaining and other agreements between "Smeltzer Enterprises, Inc. d/b/a/ Fireservice Management" and the Union and between "Fireservice Management Michigan LLC" and the Union, as well as a settlement agreement between "Smeltzer Enterprises Inc. d/b/a/ White Tower Industrial and Laundry Cleaners Inc." and the Fund. (*See* Doc. 53 ("Oh Decl.") ¶ 4; *id.* Ex. A at 2-72.) The Oh Decl. is not consecutively paginated, so page numbers for this Exhibit refer to the page numbers generated by the Court's ECF system.

quarterly payment and would be in default unless they cured within sixty days. (Oh Decl. Ex. C; Ds' 56.1 Resp. ¶ 7.)

On June 2, 2011, and July 1, 2011, Fireservice requested by letter that Plaintiffs review their withdrawal liability determination because Fireservice is "separate and distinct" from Smeltzer. (Oh Decl. Ex. D; Ds' 56.1 Resp. ¶ 9.) Defendants did not initiate arbitration of the withdrawal liability. (Ps' 56.1 Resp. ¶ 10.) Defendants have made no withdrawal liability payments to the Fund. (*Id.* ¶¶ 8, 11.)

### B. Procedural History

Plaintiffs commenced this action on May 26, 2017, and asserted four causes of action. The first claim alleges that Defendant Fireservice is in default within the meaning of Section 4219(c)(5)(A) of ERISA and that Plaintiffs are entitled to immediate payment of withdrawal liability in the amount of $221,783.46 plus accrued interest, liquidated damages, and attorneys' fees and costs under Section 502(g). (*See* Doc. 1 ("Compl.") ¶¶ 21-30; Ps' 56.1 Resp. ¶ 7.) The second claim alleges that Defendant Smeltzer is an "employer" of the employees of Fireservice within the meaning of Section 3(5) of ERISA because it had an alter ego, single employer, and/or joint employer relationship with Fireservice, and that Smeltzer therefore is jointly and severally liable for Fireservice's withdrawal liability, interest, liquidated damages, and attorneys' fees and costs. (*Id.* ¶¶ 31-35.) The third claim alleges that John Doe Defendants 1-10 are and at all relevant times were trades or businesses under common control with Fireservice under Section 4001(b)(1) of ERISA and Section 414 of the Internal Revenue Code of 1986, and that the John Does are therefore jointly and severally liable for the total amount of Fireservice's liability. (*Id.*

4

¶¶ 36-40.) The fourth claim alleges that the Fund will be irreparably harmed unless Defendants are immediately restrained from disposing of their assets. (*Id.* ¶ 42.)

Discovery concluded on June 4, 2018. (*See* Doc. 21.) On September 7, 2018, Proposed Intervenors moved to intervene or be joined. (Doc. 34 ("Intervenors' Mem.").) On the same date Proposed Intervenors also moved for summary judgment on Plaintiffs' third and fourth claims on the ground that Proposed Intervenors were not under common control with Defendants when Fireservice withdrew from the Plan. (Doc. 35; Doc. 40 ("Intervenors' SJ Mem.") at 2.) On October 15, 2018, Plaintiffs moved for summary judgment on their claims against Fireservice and Smeltzer. (Doc. 51.)

## II. LEGAL STANDARD

### A. Intervention and Joinder

Proposed Intervenors advance several theories to support their introduction into this action.

#### 1. Intervention as of Right

Under Federal Rule of Civil Procedure 24(a)(2),

> the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

An applicant seeking to intervene must "(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *"R" Best*

*Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006) (internal quotation marks omitted). Failure to satisfy any one of these factors is sufficient ground to deny the application. *Id.* at 241.

### 2. Permissive Intervention

Under Federal Rule of Civil Procedure 24(b), "the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact. . . . In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Courts in this Circuit also consider "'the nature and extent of the intervenors' interests,' the degree to which those interests are 'adequately represented by other parties,' and 'whether parties seeking intervention will significantly contribute to [the] full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.'" *Apple v. Atl. Yards Dev. Co.*, No. 11-CV-5550, 2014 WL 5450030, at *4 (E.D.N.Y. Oct. 27, 2014) (alteration in original) (quoting *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 192 (2d Cir. 1978)). A district court's discretion in this capacity is broad, and "a denial of permissive intervention has virtually never been reversed." *Catanzano ex rel. Catanzano v. Wing*, 103 F.3d 223, 234 (2d Cir. 1996) (internal quotation marks omitted).

### 3. Required Joinder of Parties

Rule 19 requires joinder of necessary parties. A party is necessary if, in its absence, "the court cannot accord complete relief among existing parties" or the party has an interest relating to the subject of the action and its absence may impair or impede its ability to protect that interest

or leave other persons at risk of incurring multiple or inconsistent obligations. Fed. R. Civ. P. 19(a); *see Riverkeeper, Inc. v. Mirant Lovett, LLC*, 675 F. Supp. 2d 337, 353 (S.D.N.Y. 2009). "[B]ecause of joint and several liability, joint tortfeasors and coconspirators are not indispensable parties under the Federal Rules of Civil Procedure; Rule 19(a) does not require joinder of an absent party that can later be held responsible for contribution or indemnification." *Garner v. Behrman Bros. IV*, 260 F. Supp. 3d 369, 381 (S.D.N.Y. 2017) (internal quotation marks omitted).

### 4. **Permissive Joinder of Parties**

Rule 20 permits joinder of defendants where "any right to relief is asserted against [the parties] jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and . . . any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

### B. **Summary Judgment**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to "present evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

## III. DISCUSSION

### A. Motion to Intervene or Be Joined

First, Proposed Intervenors urge that they have a right to intervene under Rule 24(a)(2). (Intervenors' Mem. at 3-5.) But this application is untimely. The Court has broad discretion to assess timeliness and may examine factors including "how long the motion was delayed, whether the existing parties were prejudiced by that delay, whether the movant will be prejudiced if the motion is denied, and unusual circumstances militating either for or against a finding of timeliness." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 182 (2d Cir. 2001). Here, it is undisputed that Proposed Intervenors were under common control with Fireservice at the time Plaintiffs filed their Complaint on May 26, 2017, (Intervenors' Mem. at 2; Doc. 44 ("Ps' Opp.") at 3), and yet Proposed Intervenors did not seek permission to make the motion until May

8

25, 2018, (Doc. 22), less than two weeks before the close of discovery and a year after the case was commenced.[2] This delay makes the motion untimely, *see Weisshaus v. Swiss Bankers Ass'n (In re Holocaust Victim Assets Litig.)*, 225 F.3d 191, 199 (2d Cir. 2000*)* (eight-month delay before motion to intervene); *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 71 (2d Cir. 1994) (constructive knowledge of interest fifteen months prior to motion to intervene and actual knowledge for eight months); *Rudolph v. Hudsons Bay Co.*, No. 18-CV-8472, 2019 WL 1416986, at *3 (S.D.N.Y. Mar. 29, 2019) (denying motion after nine-month delay), particularly because, as discussed below, the delay has prejudiced Plaintiffs.[3]

Second, Proposed Intervenors ask the Court to grant permission to intervene under Rule 24(b). (Intervenors' Mem. at 5-6.) But permissive intervention here would unduly delay and prejudice the adjudication of the original parties' rights because the parties have completed discovery and Plaintiffs have already moved for summary judgment. "[W]here a grant of a motion to intervene would require further discovery, a court may properly deny the motion" for prejudicing the existing parties due to delay. *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 315 F.R.D. 169, 173 (S.D.N.Y. 2016). Plaintiffs contend that they will request discovery from Proposed Intervenors on assets, transfers, tax returns, financial statements, employees, and

---

[2] Proposed Intervenors argue that the delay is attributable to Plaintiffs' failure to name them as Defendants. (Intervenors' Mem. at 4.) This argument is circular. Moreover, as discussed below, there is a simple explanation for Plaintiffs' failure to name Proposed Intervenors as two of the John Doe "common control" Defendants: Plaintiffs do not regard Proposed Intervenors as such.

[3] Finding the application untimely, I need not address the other prongs of the test for intervention as of right.

relationships with Defendants. (Ps' Opp. at 4.) Accordingly, Proposed Intervenors' motion to intervene is denied.[4]

Third, Proposed Intervenors seek leave to join as defendants. But they are neither necessary nor proper parties. (Intervenors' Mem. at 6-7.) Under Rule 19, "necessary parties . . . are only those parties whose ability to protect their interests would be impaired *because of* that party's absence from the litigation." *Fed. Ins. Co. v. SafeNet, Inc.*, 758 F. Supp. 2d 251, 258 (S.D.N.Y. 2010) (emphasis in original) (internal quotation marks omitted). Proposed Intervenors assert that they have an interest in this action because "Plaintiff alleges that 'Defendant John Does 1-10 are jointly and severally liable for the total amount of Defendant Fireservice's withdrawal liability, interest, liquidated damages, and attorneys' fees and costs,'" and they are John Does. (Intervenors' Mem. at 4 (quoting Compl. ¶ 38).) This position is flawed, however, because Plaintiffs make no such allegation. In their third claim, Plaintiffs seek to hold liable trades or businesses that "are, *and at all relevant times were*, trades or businesses under common control" with Fireservice. (Compl. ¶ 37 (emphasis added).) But they have not alleged that Proposed Intervenors are such entities.

---

[4] Proposed Intervenors' motion under 24(b) is also untimely for the reasons stated above. *See John Wiley & Sons*, 315 F.R.D. at 175 ("The issue of timeliness is evaluated according to the same criteria whether intervention is sought as of right or permissively.") (citing *NAACP v. New York*, 413 U.S. 345, 365 (1973) ("Whether intervention be claimed as of right or as permissive . . . the court where the action is pending must first be satisfied as to timeliness.")). Further, for reasons discussed below, denial of intervention will not harm Proposed Intervenors' interests.

Companies "under common control on the date of . . . withdrawal from [a] Fund" can be held jointly and severally liable for the amount of withdrawal liability. *NYSA-ILA Pension Tr. Fund v. Montague Assocs., Inc.*, No. 78-CV-911, 1996 WL 480926, at *2 (S.D.N.Y. Aug. 23, 1996); *see Trs. of the Local 813 Pension Tr. Fund v. Frank Miceli Jr. Contracting, Inc.*, No. 13-CV-198, 2016 WL 5879612, at *3 (E.D.N.Y. Mar. 9, 2016) ("Because the purpose of withdrawal liability is to fix liability upon those who were responsible at the time of withdrawal for continued funding, multiple entities may be held liable for the withdrawal obligations of one employer if they are shown to be under common control . . . .") (internal quotation marks omitted), *report and recommendation adopted*, 2016 WL 1275041 (E.D.N.Y. Mar. 31, 2016). The "relevant time[]" in this case, therefore, is the date of withdrawal, and the parties agree that Proposed Intervenors were not under common control with Defendants on the date of withdrawal; in fact, they did not yet exist. (Intervenors' SJ Mem. at 2; Doc. 45 at 5.) They thus cannot be among the John Doe Defendants the third claim seeks to hold liable, and Proposed Intervenors accordingly do not have an interest to protect under Rule 19 that could be impaired by their absence from this action.

Finally, for the same reasons, Proposed Intervenors are not proper parties under Rule 20, because Plaintiffs do not state a claim against them; therefore, no "right to relief is asserted against [Defendants and Proposed Intervenors] jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2)(A).

The motion to intervene or be joined is therefore denied.

### B. Proposed Intervenors' Motion for Summary Judgment

Because Proposed Intervenors are not parties to this action, their motion for summary judgment under Rule 56 is denied as moot.

### C. Plaintiffs' Motion for Summary Judgment

#### 1. MPPAA Withdrawal Liability

In 1980, Congress enacted the Multiemployer Pension Plan Amendments Act ("MPPAA") "to protect the millions of retirees and workers who are participants in multiemployer plans against the loss of their pensions." 126 Cong. Rec. H11,991 (daily ed. May 21, 1980) (statement of Rep. Thompson). "Under MPPAA an employer who withdraws from a multiemployer plan, with certain exceptions, is assessed 'withdrawal liability,' that is, the employer is required to continue funding its proportionate share of the plan's unfunded vested benefits." *ILGWU Nat'l Ret. Fund v. Levy Bros. Frocks*, 846 F.2d 879, 881 (2d Cir. 1988) (quoting 29 U.S.C. §§ 1381, 1391). Upon an employer's withdrawal, the plan sponsor or fund "must determine the amount of the employer's withdrawal liability, notify the employer of the amount and make a demand for payment." *Id.* (citing 29 U.S.C. § 1382). "[T]he MPPAA establishes a 'pay now-fight later' system, where an employer who receives notice of withdrawal liability must start making payments within 60 days, whether it believes it is liable for the amount demanded or not." *Amalgamated Lithographers of Am. v. Unz & Co.*, 670 F. Supp. 2d 214, 222 (S.D.N.Y. 2009).

Parties must arbitrate any dispute over withdrawal liability within 60 days of notification or 180 days if the employer requested review of the fund's determination; "[w]hen no arbitration

proceeding is initiated, the plan sponsor may bring an action in state or federal court to collect the amounts due and owing." *Levy Bros. Frocks*, 846 F.2d at 881 (citing 29 U.S.C. § 1401(b)(1)). "If an employer fails to arbitrate a dispute over its withdrawal liability, it generally waives the right to contest the propriety and amount of withdrawal liability." *Durso v. Store 173 Food Corp.*, No. 16-CV-9456, 2018 WL 6268218, at *3 (S.D.N.Y. Nov. 30, 2018); *see UNITE Nat'l Ret. Fund v. Veranda Mktg. Co.*, No. 04-CV-9869, 2009 WL 2025163, at *4 (S.D.N.Y. July 13, 2009) ("[The employer] did not request arbitration within the statutory time period; that failure precluded [the employer] from challenging Plaintiff's determination of its liability.").

### 2. Defendants' Withdrawal Liability

For Plaintiffs to prevail on summary judgment, "there can be no genuine dispute that: (i) defendant constitutes an 'employer' under the MPPAA; (ii) defendant received notice of a withdrawal liability assessment against it; and (iii) defendant failed to initiate arbitration as required by law." *NYSA-ILA Pension Tr. Fund v. Am. Stevedoring, Inc.*, No. 12-CV-2506, 2014 WL 462835, at *2 (S.D.N.Y. Feb. 5, 2014), *as amended* (Feb. 5, 2014).

Defendants do not dispute that they received notice of a withdrawal liability to the Fund[5] and did not initiate arbitration under 29 U.S.C. § 1401. (Ds' 56.1 Resp. ¶¶ 7, 10.) Rather, as to

---

[5] Plaintiffs provided the Fund's notice letter informing Fireservice that it had incurred withdrawal liability. (*See* Oh Decl. Ex. B.) The letter is addressed to Thomas Smeltzer, President, "Fire Service Management LLC," and it identifies the "employer" as "Fire Service Management LLC f/k/a/ White Tower Laundry." To whatever extent Smeltzer Enterprises Inc. may have had a basis for denying that it received notice of withdrawal liability from the Fund, it waived that argument by admitting that it had indeed received notice. (*See* Ds' 56.1 Resp. ¶ 6.)

their employer status, Defendants contend that they are "two *different* employers that separately withdrew from the Plan" and therefore cannot be held liable for one another's withdrawal liability. (Doc. 42 ("Ds' Mem.") at 8 (emphasis added), 10; *see* Ds' 56.1 Resp. ¶ 3 ("Fireservice and Smeltzer are two different entities comprising two different employers. . . . [E]ach entity submitted . . . its own separate contributions directly to the Fund from its own bank account.").) They argue that the amount Plaintiffs seek covers the liability for Fireservice's handful of employees and Smeltzer's dozens of employees. (Smeltzer Aff. ¶ 26 ("[Fireservice] employed three members of the Union."); *id.* ¶ 6 ("At the height of its success, Smeltzer . . . employed more than 100 [Union] members . . . ."); Ds' Mem. at 10 ("Plaintiffs have not developed, and cannot develop, sufficient facts to demonstrate that Fireservice is responsible for the Smeltzer Group['s] withdrawal liability . . . .").)

Defendant Fireservice meets the three withdrawal-liability elements[6] and is liable to the Fund for the withdrawal liability assessed. *See Koenig Rest. Corp.*, 2016 WL 3453456, at *3. Fireservice had the right to dispute the amount by initiating arbitration, but having failed to do so, it is estopped from contesting the amount Plaintiffs seek. *See Trs. of Local 813 Ins. Tr. Fund v. Rogan Bros. Sanitation*, No. 12-CV-6249, 2018 WL 1587058, at *13 (S.D.N.Y. Mar. 28, 2018) ("The failure to arbitrate means that [the party assessed with withdrawal liability] cannot

---

[6] Fireservice admits that it made payments to the Plan and was party to a collective bargaining agreement with the Union around the time that it withdrew from the Plan, (Ds' 56.1 Resp. ¶ 3), which suffices to show Fireservice was an employer under the MPPAA prior to its withdrawal from the Plan, *see Trs. of the Nat'l Ret. Fund v. Koenig Rest. Corp.*, No. 14-CV-2271, 2016 WL 3453456, at *3 (S.D.N.Y. June 16, 2016).

14

challenge the calculation of the amount of the unpaid withdrawal liability."), *appeal filed*, No. 18-1274 (2d Cir. Apr. 30, 2018); *Labarbera v. United Crane & Rigging Servs., Inc.*, No. 08-CV-3274, 2011 WL 1303146, at *5 (E.D.N.Y. Mar. 2, 2011) ("[A]n employer's failure to arbitrate or dispute the plan sponsor's calculation in the face of proper notification will result in the court's adoption of the sum proffered by the plan . . . .").[7]

Defendants have raised a genuine issue of material fact, however, as to whether, for purposes of this case, Smeltzer was an employer under the MPPAA before the withdrawal. Defendants deny that Smeltzer was a party to the collective bargaining agreement governing Fireservice's contributions. (Ds' 56.1 Resp. ¶ 3.) Even though Plaintiffs produced several agreements that name "Smeltzer Enterprises, Inc., d/b/a Fireservice Management" as a party, (*see* Oh Decl. Ex. A at 2, 19-22, 38-41), Defendants raise a fact dispute by claiming that this was an error that Smeltzer tried to rectify. (Ds' 56.1 Resp. ¶ 3.) Their position is bolstered by the fact that other agreements provided by Plaintiffs do not refer to Smeltzer. (*See* Oh Decl. Ex. A at 45-47, 66-69.) Further, Defendants contend that Fireservice and Smeltzer operated different businesses, (*see* Smeltzer Aff. ¶ 5; Weiner Aff. ¶ 5); served distinct customer bases, (Smeltzer Aff. ¶ 5 (automotive industry); Weiner Aff. ¶ 6 (fire departments)); had different owners (although Martin T. Smeltzer was an owner of both), (Smeltzer Aff. ¶¶ 20-21; Weiner Aff. ¶ 18);

---

[7] Indeed, Fireservice was aware of the MPPAA's regime but offers no explanation for why it failed to initiate arbitration. (*See* Oh Decl. Ex. D at 3 (letter from Fireservice to the Fund) ("If resolution cannot be achieved . . . we would be seeking arbitration as provided by statute.").) "The failure to seek such relief on a timely basis may, in some instances, lead to a harsh result, but the harshness of the default is largely a self-inflicted wound." *Levy Bros. Frocks*, 846 F.2d at 887 (internal quotation marks omitted).

filed separate tax returns, maintained separate bank accounts, and kept separate financial records, (Smeltzer Aff. ¶ 32; Weiner Aff. ¶ 13); paid retirement contributions separately (Smeltzer Aff. ¶ 30; Weiner Aff. ¶ 17); and employed different people (Smeltzer Aff. ¶ 34; Weiner Aff. ¶ 15). Accordingly, a reasonable jury could find that Smeltzer was not party to the relevant collective bargaining agreements and therefore was not an employer under the MPPAA at the time of withdrawal. Thus, Plaintiffs' summary judgment motion is denied as to Smeltzer.

### 3. Unconscionability

Defendants urge the Court to enter an order that Fireservice is not responsible for Smeltzer's withdrawal liability by arguing that imposing the total withdrawal liability assessed on Fireservice would be procedurally and substantively unconscionable. (Ds' Mem. at 14-16.) Even if the common law unconscionability doctrine is a defense to MPPAA withdrawal liability,[8] imposing liability on Fireservice is not unconscionable. In New York,

> "a determination of unconscionability generally requires a showing that the contract was both procedurally and substantively unconscionable when made – *i.e.*, some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party."

---

[8] "[C]ourts may not use federal common law to rewrite, displace, or otherwise alter a federal statute's explicit language." *Zarringhalam v. United Food & Commercial Workers Int'l Union Local 1500 Welfare Fund*, 906 F. Supp. 2d 140, 150-51 (E.D.N.Y. 2012). The MPPAA is clear on how to resolve withdrawal liability disputes. *See* 29 U.S.C. § 1401 ("Any dispute . . . shall be resolved through arbitration."). Defendants cite cases applying unconscionability in different MPPAA contexts, *see, e.g.*, *Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Constr. Corp.*, 258 F.3d 645, 655 (7th Cir. 2001) (finding 1.5 percent monthly interest not unconscionable), but no court in this Circuit has applied the common law unconscionability doctrine to MPPAA withdrawal liability. Accordingly, unconscionability in all likelihood is not a defense to an assessment of withdrawal liability.

16

*Reid v. Supershuttle Int'l, Inc.*, No. 08-CV-4854, 2010 WL 1049613, at *4 (E.D.N.Y. Mar. 22, 2010) (quoting *Gillman v. Chase Manhattan Bank*, N.A., 73 N.Y.2d 1, 11 (1988)). Defendants have made no showing that Fireservice lacked any meaningful choice when entering the collective bargaining agreements that support its employer status. Moreover, Defendants fail the substantive unconscionability prong. They argue that the amount Plaintiffs seek includes Smeltzer's withdrawal liability, and that "impos[ing] the Smeltzer Group's substantial withdrawal liability on Fireservice" would be substantively unconscionable because Smeltzer was a larger company that had a "vast, decades-long contribution history." (D's Mem. at 14-15.) But Fireservice had every opportunity to dispute the total withdrawal liability. *See Rogan Bros.*, 2018 WL 1587058, at *13 ("The failure to arbitrate means that [the party assessed with withdrawal liability] cannot challenge the calculation of the amount of the unpaid withdrawal liability."). Any unfairness perceived at first blush is the result of "a self-inflicted wound," *Levy Bros. Frocks*, 846 F.2d at 887 (internal quotation marks omitted), not a contract term that is "unreasonably favorable" to Plaintiffs. Indeed, it is hard to fathom how the outcome dictated by Congress, well known to the relevant parties, could be regarded as unconscionable. Thus Plaintiffs' summary judgment motion is granted as to Fireservice.

### D. **Plaintiffs' Award**

Plaintiffs claim that in addition to the withdrawal liability amount, they are entitled under 29 U.S.C. §§ 1132(g)(2) and 1451(b) to interest on the withdrawal liability, liquidated damages, and attorneys' fees and costs. (Doc. 52 at 12.)

17

Section 1132(g)(2) states that when the fiduciaries of a plan prevail in an action to enforce delinquent contributions, the plan shall be awarded:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of –
>     (i) interest on the unpaid contributions, or
>     (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan . . . .

29 U.S.C. § 1132(g)(2). The Collections Policy governing the Fund provides for interest at the "rate of one percent (1%) per month or part thereof, noncompounded, on the outstanding balance" and liquidated damages in "an amount equal to the greater of the interest on the delinquent payment or twenty percent (20%) of the delinquent amount due." (Oh Decl. Ex. E at 4-5.) Defendants do not dispute the applicability of these provisions and thus Plaintiffs are entitled to interest on the withdrawal liability, liquidated damages, and attorneys' fees and costs. *See Durso*, 2018 WL 6268218, at *5.

## IV. CONCLUSION

For the foregoing reasons, Proposed Intervenors' motion to intervene is DENIED and their motion for summary judgment is DENIED as moot. Plaintiffs' motion for summary judgment is GRANTED as to Fireservice Management, LCC, and DENIED as to Smeltzer Enterprises Inc.

Plaintiffs shall submit an accounting of their proposed interest, liquidated damages, and attorneys' fees and costs to Defendant Fireservice by May 1, 2019.  If the parties can agree on a proposed judgment, it should be submitted by May 8, 2019.  If they cannot, Plaintiffs should make a submission in support of their calculations by May 22, 2019; Defendant Fireservice may oppose by June 5, 2019; and Plaintiff may reply by June 12, 2019.  Plaintiffs should also advise by letter, no later than May 1, 2019, if they wish to pursue their claim against Smeltzer.  If so, the Court will schedule a conference to set a trial date.

The Clerk of Court is respectfully directed to terminate the pending motions.  (Docs. 33, 35, 51.)

**SO ORDERED.**

Dated: April 17, 2019
       White Plains, New York

                                                    CATHY SEIBEL, U.S.D.J.